UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UNITED STATES OF AMERICA

vs.                                                          Case No. 8:15-CR-214-T-27TBM

GLENN JASEN and
KATHRYN JASEN

_____/

## ORDER

**BEFORE THE COURT** is Defendants' Joint Motion to Dismiss the Indictment (Dkt. 55)

and the Government's opposition (Dkt. 60). Upon consideration, the motion is DENIED.

### Rule 12(b)(3)(B) Standard

Defendants contend that the Superseding Indictment fails to charge an offense against the

United States and that the Court lacks jurisdiction. A resolution of Defendant's challenge is limited

to the facial sufficiency of the allegations for purposes of Rule 12(b)(3)B), Fed.R.Crim.P. *United

States v. Sharpe,* 438 F.3d 1257 (11th Cir. 2006). A valid indictment (1) contains the essential

elements of the charged offense, and (2) sufficiently apprises the defendant of what he must be

prepared to defend. *United States v. Bobo*, 344 F.3d 1076, 1083 (11th Cir. 2003). The failure of an

indictment to allege a violation of federal law is a jurisdictional defect. *United States v. Izurieta*, 710

F.3d 1176, 1179 (11th Cir. 2013).

### The Superseding Indictment

The Superseding Indictment charges Defendants with wire fraud arising from the sale of real

property (Dkt. 10). Specifically, it is alleged that they devised a scheme to defraud by, among other

means, failing to disclose the existence of a sinkhole on the property and their insurance claim

arising from the sinkhole, falsely denying the existence of the sinkhole and insurance claim, and

1

affirmatively misrepresenting that there was no sinkhole or prior sinkhole insurance claim in the sales documents (Id. at p. 2). Defendants allegedly executed the scheme by knowingly causing the transmission of wire communications in interstate commerce, that is, the proceeds of a mortgage taken out by the purchasers of the property (Id. at p. 3).

## Wire Fraud

"The elements of wire fraud under 18 U.S.C. § 1343 are (1) intentional participation in a scheme to defraud and (2) use of the interstate wires in furtherance of the scheme." *United States v. Hasson*, 333 F.3d 1264, 1270 (11th Cir.), *cert. denied*, 541 U.S. 1056 (2004). The scheme to defraud requires proof of a misrepresentation, omission, or concealment of a material fact reasonably calculated to deceive a person of ordinary prudence. *Id.* at 1270-71.[1]

## Discussion

Defendants do not quarrel with whether the Superseding Indictment alleges the essential elements of a wire fraud offense. Rather, they contend that the Superseding Indictment fails to provide them with "fair notice" that their conduct was criminal. Further, they contend the wire fraud statute as applied is unconstitutionally vague. Apart from their rant about what they contend is a "frightening" expansion of the federal criminal statutes, the gist of their argument is that "application of the wire fraud statute to the Jasen's private real estate contract" does not provide them with "fair notice that they were criminally liable for their conduct."

---

[1] A material misrepresentation has a natural tendency to influence, or be capable of influencing, the decision maker to whom it is addressed. *Hasson*, 333 F.3d at 1270. "To 'cause' the interstate wires to be used, the use of the wires need not be actually intended; it need only be reasonably foreseeable." *Id.* at 1270 (citing *United States v. Ross*, 131 F.3d 970, 984-85 (11th Cir. 1997).

Like the federal mail fraud statute, the wire fraud statute is intended to protect property rights. *McNally v. United States*, 483 U.S. 350, 360 (1987). The "wire fraud statute is to be interpreted the same as the mail fraud statute." *United States v. Conner*, 752 F.2d 566, 572 (11th Cir. 1985); *United States v. Bradley*, 644 F.3d 1213, 1238 (11th Cir. 2011) ("Mail and wire fraud are analytically identical save for the method of execution.").

## Fair Notice and Vagueness

Fair notice insures that "no man shall be held criminally responsible for conduct which he could not reasonably understand to be proscribed." *United States v. Lanier*, 520 U.S. 259, 265 (1997) (citations omitted).  Defendants invoke three related principles of statutory construction to support their fair warning argument.

First, "the vagueness doctrine bars enforcement of 'a statute which either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application.'" *Id*. at 266 (citations omitted). Second, strict construction of criminal statutes, "or the rule of lenity, ensures fair warning by so resolving ambiguity in a criminal statute as to apply it only to conduct clearly covered." *Id*.  Third, "due process bars courts from applying a novel construction of a criminal statute to conduct that neither the statute nor any prior judicial decision has fairly disclosed to be within its scope . . ." *Id*.

The "touchstone" in each of these is "whether the statute, either standing alone or as construed, made it reasonably clear at the relevant time that the defendant's conduct was criminal." *Id.* at 267. Rhetoric aside, the thrust of Defendants' argument is without merit.

With respect to defendants' fair notice challenge, since the wire fraud statute requires *mens rea*, "it does relieve the statute of the objection that it punishes without warning an offense of which the accused was unaware." *Conner*, 752 F.2d at 574 (quoting *Screws v. United States,* 325 U.S. 91, 102 (1945))("But where the punishment imposed is only for an act knowingly done with the purpose of doing that which the statute prohibits, the accused cannot be said to suffer from lack of warning or knowledge that the act which he does is a violation of law. The requirement that the act must be willful or purposeful may not render certain, for all purposes, a statutory definition of the crime which is in some respects uncertain. But it does relieve the statute of the objection that it punishes

without warning an offense of which the accused was unaware.").

With respect to Defendants' vagueness argument, "[a] conviction fails to comport with due process if the statute under which it is obtained fails to provide a person of ordinary intelligence fair notice of what is prohibited, or is so standardless that it authorizes or encourages seriously discriminatory enforcement." *United States v. Williams*, 553 U.S. 285, 304 (2008).

There is nothing vague about the wire fraud statute, however. "A statute meets the standard of certainty required by the Constitution if its language conveys sufficiently definite warning as to the proscribed conduct when measured by common understanding and practices." *Conner*, 752 F.2d at 574. That the facts alleged may not be a "prototypical" wire fraud scheme does not necessarily mean that the wire fraud statute is unconstitutional as applied. *United States v. Nelson*, 712 F.3d 498, 508 (11th Cir. 2013). Likewise, that Defendants may not have known that their conduct was unlawful does not render the statute unconstitutional as applied. *Id.* "Void for vagueness simply means that criminal responsibility should not attach where one could not reasonably understand that his conduct is proscribed," not that "the statute must define every factual situation that may arise." *Id.* And "ignorance of the fact that one's conduct is a violation of the law is no defense to criminal prosecution." *Id.*

In the context of the federal wire fraud statute, a seller of real property in Florida with ordinary intelligence would know, or should reasonably understand, that lying about whether the property has sinkhole damage would constitute a fraudulent misrepresentation.[2] No less than lying about owner occupancy or a purchaser's income in a mortgage application, common sense

---

[2] Indeed, Florida law requires a seller of real property who has made and been paid for a sinkhole claim disclose that to the buyer. Fla. Stat. § 627.7073(2)(c): "The seller of real property upon which a sinkhole claim has been made by the seller and paid by the insurer must disclose to the buyer of such property, before the closing, that a claim has been paid and whether or not the full amount of the proceeds was used to repair the sinkhole damage."

recognizes that a seller who lies to a buyer about a defect in real property which impairs the value of the property has committed a fraudulent misrepresentation.

Indeed, as Defendants' acknowledge, Florida recognizes a seller's duty to disclose a latent defect in real property which would materially impair the value of the property, and that a seller who misrepresents a material fact concerning the condition of the property would face liability for fraud. *See Johnson v. Davis,* 480 So.2d 625, 629 (Fla. 1985) (Finding that seller's misrepresentations about roof's condition constituted fraudulent misrepresentation and holding "where the seller of a home knows of facts materially affecting the value of the property which are not readily observable and are not known to the buyer, the seller is under a duty to disclose them to the buyer."); *Henson v. James M. Barker Co., Inc.,* 555 So.2d 901, 906 (Fla. 1st DCA1990) ("[W]here the seller of a home knows of facts materially affecting the value of the property which are not readily observable and are not known to the buyer, the seller is under a duty to disclose them to the buyer.").

Nor can it be reasonably doubted that lying in the circumstances alleged in the Superseding Indictment was inherently wrong and would constitute an intent to defraud, as that term is commonly understood. *See McNally,* 483 U.S. at 358-59 ("As the Court long ago stated, however, the words 'to defraud' commonly refer 'to wronging one in his property rights by dishonest methods or schemes,' and 'usually signify the deprivation of something of value by trick, deceit, chicane or overreaching.'"),quoting *Hammerschmidt v. United States,* 265 U.S. 182, 188 (1924).

The federal wire fraud statute has traditionally been construed to "effect its broad purpose: to prohibit fraudulent enterprises." *Conner,* 752 F.2d at 574. As Defendants acknowledge, "[a]ll that is necessary is that the scheme be reasonably calculated to deceive; the intent element of the crime is shown by the existence of the scheme." *United States v. Bradley,* 644 F.3d 1213, 1239 (11th Cir. 2011). And while the statute does not define "scheme to defraud," "[c]ourts have defined the phrase

broadly, allowing it to encompass deceptive schemes that do not fit the common-law definition of fraud." *United States v. Pendergraft*, 297 F.3d 1198, 1208 (11th Cir. 2002). The statute prohibits "any" scheme to defraud. *United States v. Svete*, 556 F.3d 1157, 1169 (11th Cir. 2009) (*en banc*) ("The language of the mail fraud statute prohibits '*any* scheme or artifice to defraud,' (citation omitted) (emphasis in original), and the word 'any' conveys the broad and unambiguous reach of the statute."); *United States v. Frick*, 588 F.2d 531, 534 (5th Cir. 1979) ("The wire fraud statute under which defendants were convicted, 18 U.S.C. s. 1343, condemns all schemes to defraud in which interstate wires are used to further the scheme.").

Moreover, the fraudulent aspect of a scheme is measured by a "nontechnical standard." *Bradley*, 644 F.3d at 1240 (citing *Gregory v. United States*, 253 F.2d 104, 109 (5th Cir. 1958)) (reasoning that measuring mail fraud statute scheme by nontechnical standard "is a reflection of moral uprightness, of fundamental honesty, fair play and right dealing in the general and business life of members of society."). As that Court put it: "The law does not define fraud; it needs no definition; it is as old as falsehood and as versable as human ingenuity." *Gregory v. United States*, 253 F.2d at 109) (quoting *Weiss v. United States*, 122 F.2d 675, 681 (5th Cir. 1941). The word defraud "signifies 'the deprivation of something of value by trick, deceit, chicane, or overreaching.'" *Pendergraft*, 297 F.3d at1208-09 (quoting *Hammerschmidt v. United States*, 265 U.S. at 188).

And that is what these Defendants are charged with, lying and scheming to induce a purchaser to purchase their property and obtain a mortgage to finance the purchase. Contrary to Defendants' contention, the Superseding Indictment does not allege a mere civil breach of contract. It alleges a material misrepresentation and concealment intended "to cheat and deceive, to pretend and misrepresent," and as such, is a proper subject of the federal wire fraud statute. *See Gregory v. United States*, 253 F.2d at 109 (construing mail fraud statute).

For these reasons, Defendants' fair notice and vagueness challenges to application of the wire fraud statute to the conduct alleged in the Superseding Indictment fails.

### Rule of Lenity

Next, Defendants contend that the "rule of lenity" should foreclose prosecution of this case. As noted, the rule of lenity is a "canon of strict construction of criminal statutes, which ensures fair warning by so resolving *ambiguity* in a criminal statute as to apply only to conduct clearly covered." *Lanier*, 520 U.S. at 266 (emphasis added). Defendants misconstrue, however, the threshold statutory ambiguity required before the rule of lenity applies when they argue that "there is a genuine ambiguity as to whether Congress intended the phrase 'scheme or artifice to defraud' in 18 U.S.C. § 1343 to cover the non-disclosure or concealment of latent defects in private party real estate transactions." As *Lanier* and Supreme Court precedent make clear, it is not an "ambiguity" in Congressional intent that is required but rather an ambiguity in the statute itself. Defendants point to no ambiguity in the statute. *United States v. Santos*, 553 U.S. 507, 515 (2008) ("When interpreting a criminal statute, we do not play the part of a mindreader. In our seminal rule-of-lenity decision, Chief Justice Marshall rejected the impulse to speculate regarding a dubious congressional intent.").

True, the "rule of lenity is applied when a broad construction of a criminal statute would 'criminalize a broad range of apparently innocent conduct.'" *Svete,* 556 F.3d at 1169 (quoting *Liparota v. United States*, 471 U.S. 419, 426 (1985)). As with the mail fraud statute, however, the rule of lenity is inapplicable here because the statute, as the Government correctly points out, criminalizes "any scheme or artifice to defraud," conveying "the broad and *unambiguous* reach of the statute." *Svete*, 556 F.3d at 1169 (emphasis added). And nothing in the statute purports to criminalize "apparently" innocent conduct. *Id.*

## Due Process

Turning to Defendants' next contention, while they are correct that "due process bars courts from applying a novel construction of a criminal statute to conduct that neither the statute nor any prior judicial decision has fairly disclosed to be within its scope," a prior decision with similar facts is not required for constitutional fair notice. *Lanier*, 520 U.S. at 271-72.

In an analogous context, *Lanier* rejected a "categorical rule that decisions of the Courts of Appeals and other courts" are required before "the warning is fair enough." *Id*. at 269. Nor is a prior case with "fundamentally similar" facts required, so long as prior decisions give reasonable warning that the conduct (in that case) violated constitutional rights. *Id.* The Court reasoned that "general statements of the law are not inherently incapable of giving fair and clear warning." *Id*. at 271. If "pre-existing law" makes it apparent that conduct is unlawful, "the constitutional requirement of fair warning is satisfied." *Id*. at 271-72.

There is nothing novel about application of the wire fraud statute to fraudulent schemes in real estate transactions. *See United States v. Brester*, 786 F.3d 1335, 1337 (11th Cir. 2015) ( wire fraud charges arising from fraudulent mortgage loan scheme); *United States v. Cavallo*, 790 F.3d 1202, 1211 (11th Cir. 2015) (husband and wife charged with wire fraud in mortgage fraud scheme); *United States v. Neder*, 197 F.3d 1122, 1125 (11th Cir. 1999) (attorney indicted and convicted of numerous wire fraud counts involving fraudulent mortgage scheme); *United States v. Austin*, 70 F.3d 1282 (10th Cir. 1992) (wire fraud arising from false deposit statements in HUD settlement statements); *United States v. McNeil,* 45 Fed.Appx. 225, 229 (4th Cir. 2002) (misrepresentations regarding purchaser's income, rental income, and condition of subject properties supported mail and wire fraud charges in fraudulent flipping scheme).

These schemes all have the same common denominator, a material misrepresentation or

Case 8:15-cr-00214-JDW-TBM   Document 69   Filed 09/04/15   Page 9 of 12 PageID 499


concealment used to perpetrate a scheme to defraud involving the acquisition or sale of real property. Contractual nondisclosure and material misrepresentation permeate each scheme. The Superseding Indictment in this case is no different. As discussed, lying is inherently wrong, and when used to perpetuate a fraudulent scheme which causes an interstate wire transmission, a violation of § 1343 occurs. The conduct alleged in the Superseding Indictment is therefore accurately characterized as a scheme calculated to deceive within the purview of § 1343. This conclusion forecloses Defendants' due process argument.

**Federalism**

Defendants' final argument is easily disposed of. The essence of Defendants' federalism argument is:

> The principles of federalism prohibit the Government from interfering with the private real estate transactions, particularly since it is state law that governs contracts generally, and, more specifically, the duty of disclosure that a seller owes to a buyer in real estate transactions.

(Dkt. 55, p. 24).

Defendants essentially challenge the authority of the Government to prosecute this case under the Tenth Amendment, contending that this prosecution exceeds the authority that federalism defines. *See Bond v. United States*, 134 S.Ct. 2077, 2086 (2014). Defendants' argument draws heavily on the broad discussion of federalism principles in *Bond*. 134 S.Ct. at 2086 ("A criminal act committed wholly within a State 'cannot be made an offence against the United States, unless it have some relation to the execution of a power of Congress, or to some matter within the jurisdiction of the United States.'")(quoting *United States v. Fox*, 95 U.S. 670, 672 (1878)).

There can be no serious argument, however, that Congress lacks authority to enact criminal statutes proscribing conduct which uses instrumentalities of commerce for harmful purposes. *See Brooks v. United States*, 267 U.S. 432, 436-37 (1925) ("Congress can certainly regulate interstate

commerce to the extent of forbidding and punishing the use of such commerce as an agency to promote immorality, dishonesty or the spread of any evil or harm to the people of other states from the state of origin. In doing this it is merely exercising the police power, for the benefit of the public, within the field of interstate commerce."); *United States v. Ballinger*, 395 F.3d 1218, 1226 (11th Cir. 2005) ("Plainly, congressional power to regulate the channels and instrumentalities of commerce includes the power to prohibit their use for harmful purposes, even if the targeted harm itself occurs outside the flow of commerce and is purely local in nature.").

Defendants' challenge therefore turns, as did the challenge in *Bond*, on whether section 1343 covers the conduct alleged in the Superseding Indictment. *Bond v. United States,* 134 S.Ct. at 2087 ("Bond argues that section 229 does not cover her conduct. So we consider that argument first."). As noted, the wire fraud statute is construed to reach "any" scheme or artifice to defraud, conveying the "broad and unambiguous reach of the statute." *Svete,* 556 F.3d at 1169. Unlike the statute in *Bond*, nothing in Defendants' argument supports their contention that section 1343 was not intended to prohibit the fraudulent conduct they allegedly engaged in.[3] And unlike *Bond*, there is no concurrent State prosecution of Defendants to which federalism principles might otherwise direct deference. *Bond v. United States,* 134 S.Ct. at 2092-93.[4] In sum, the conclusion reached in *Bond*,

---

[3] Unlike here, *Bond* involved the interplay between a treaty (Convention on the Prohibition of the Development, Production, Stockpiling, and Use of Chemical Weapons and on Their Destruction. S. Treaty Doc. No. 103-21, 1974 U.N.T.S. 317) and a statute enacted to enforce the treaty domestically, which was used by the Government to prosecute what the Court characterized as a "purely local crime." *Bond*, 134 S.Ct. at 2083) ("The question presented by this case is whether the Implementation Act also reaches a purely local crime: an amateur attempt by a jilted wife to injure her husband's lover, which ended up causing only a minor thumb burn readily treated by rinsing with water").

Significantly, the Court in *Bond* resolved an ambiguity in § 229 (". . . the improbably broad reach of the key statutory definition given the term-'chemical weapon'-being defined; the deeply serious consequences of adopting such a boundless reading; and the lack of any apparent need to do so in light of the context from which the statute arose—a treaty about chemical warfare and terrorism."). *Id.* at 2090. No such ambiguity can be found in the wire fraud statute.

[4] *Bond*, 134 S.Ct. at 2092-93 ("But we have traditionally viewed the exercise of state officials' prosecutorial discretion as a valuable feature of our constitutional system (citation omitted). And nothing in the Convention shows a clear intent to abrogate that feature. . . . As we have explained, 'Congress has traditionally been reluctant to define as a federal crime conduct readily denounced as criminal by the States.' (citation omitted). There is no clear indication of a contrary approach here.").

that the statute there did not reach purely localized conduct, is markedly distinguishable from application of the wire fraud statute here. *See Ballinger*, 395 F.3d at 1226 (Congress possess power to prohibit use of interstate instrumentalities for harmful purposes, even if the targeted harm itself occurs outside the flow of commerce and is purely local in nature.")[5]

Relying in part on *Loughrin v. United States*, 134 S. Ct. 2384 (2014), Defendants make an intriguing argument that if this prosecution "were sustained, every real estate transaction that involved the non-disclosure of termite damage, drainage problems, mildew damage, pollution, the presence of poltergeists or any other latent defect in the condition of the land could lead to a federal prosecution for wire fraud." (Dkt. 55, p. 23-24). While this argument, except with respect to the "poltergeists" reference, at least raises a judicial eyebrow, on deeper reflection, it must fail.

In *Loughrin*, the defendant made similar arguments as those made by Defendants, urging that a broad application of the federal bank fraud statute to all fraudulent schemes involving payment by check would constitute a "sweeping expansion of federal criminal law." 134 S.Ct. at 2392. Although the Court agreed that ""[j]ust such a rebalancing of criminal jurisdiction would follow from interpreting § 1344(2) to cover every pedestrian swindle happening to involve payment by check, but in no other way affecting financial institutions," the Court rejected the challenge, relying on the "significant textual limitation" on the reach of the statute. *Id*. at 2393 ("Under that clause, it is not enough that a fraudster scheme to obtain money from a bank and that he make a false statement. The provision as well includes a relational component: The criminal must acquire (or attempt to acquire) bank property 'by means of' the misrepresentation.").

---

[5] In *Bond*, the Court concluded: "In sum, the global need to prevent chemical warfare does not require the Federal Government to reach into the kitchen cupboard, or to treat a local assault with a chemical irritant as the deployment of a chemical weapon. There is no reason to suppose that Congress--in implementing the Convention on Chemical Weapons--thought otherwise." *Id*. at 2093.

While the text of the wire fraud statute does not include a relational component similar to the bank fraud statute, its "broad and unambiguous reach" has been confirmed by precedent which this Court is constrained to follow. *See Svete,* 556 F.3d at 1169.

## Conclusion

The Superseding Indictment alleges each of the essential elements of a wire fraud offense and considering the factual allegations, sufficiently apprises Defendants of what they must be prepared to defend. The Superseding Indictment therefore alleges a wire fraud scheme within the reach of 18 U.S.C. § 1343. Defendants' motion is DENIED.

**DONE AND ORDERED** this 4th day of September, 2015.

JAMES D. WHITTEMORE
United States District Judge

Copies to: Counsel of Record

12